# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHELLE A. DESMET and SANDOR KACSO, individually and as the General Guardians of their daughter, A.K., a minor, | No. 53962-4-II |
| Respondents, | |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON, by and through its agency the DEPARTMENT OF SOCIAL AND HEALTH SERVICES and the CHILD PROTECTIVE SERVICES DIVISION thereof and YOLANDA A. DURALDE, M.D., | |
| Appellant. | |

MAXA, J. – The State of Washington, its agency the Department of Social and Health Services (DSHS), and the Child Protective Services (CPS) division (collectively the Department)[1] appeal the trial court's denial of their summary judgment motion seeking the dismissal of a lawsuit filed against the Department by Michelle Desmet and Sandor Kacso. The Department asserted that it had immunity under RCW 4.24.595(2) and therefore the lawsuit must be dismissed.

---

[1] In 2018, CPS was transferred from DSHS to the newly-created Department of Children, Youth, and Families (DCYF). RCW 43.216.906. This opinion also will use "the Department" to refer to both DSHS and DCYF.

The lawsuit arose from a series of events that occurred after Desmet and Kacso's three-month-old daughter, AK, was diagnosed with a fracture of her femur. Because there was a concern that the injury was caused by nonaccidental trauma, the King County Sheriff's Office (KCSO) placed AK into protective custody and CPS initiated a dependency proceeding. At the 72-hour shelter care hearing, the juvenile court ordered that AK be placed in the care of Kacso's sister. The Department opposed Desmet and Kacso's subsequent motion to return AK to their home, and AK remained in shelter care for approximately six months. Meanwhile, CPS had issued a "founded" letter to Desmet stating that it was more likely than not that Desmet had abused AK. CPS ultimately dismissed the dependency proceeding and later replaced the founded finding with an unfounded finding.

Desmet and Kacso's lawsuit alleged that the Department's negligent investigation resulted in AK being prevented from returning to their home. They also asserted claims for negligent infliction of emotional distress and invasion of privacy by false light. The trial court denied the Department's summary judgment motion regarding immunity under RCW 4.24.595(2), which states that the Department and its employees are not liable for acts performed to comply with court shelter care and dependency orders. The court then entered an order under CR 54(b) directing entry of a final judgment on the issue of the Department's claim of immunity under RCW 4.24.595(2).

We hold that RCW 4.24.595(2) does not apply to Desmet and Kacso's negligent investigation claim or to their negligent infliction of emotional distress and false light claims. We decline to address the Department's arguments that summary judgment is appropriate on the merits of the negligent investigation claim because that issue is beyond the scope of the trial court's CR 54(b) order. Accordingly, we affirm the trial court's order denying the Department's

2

summary judgment motion on the issue of immunity under RCW 4.24.595(2) for Desmet and Kacso's claims and remand for further proceedings.

FACTS

*Background*

Desmet and Kacso were parents of a baby named AK who was born in October 2015. Desmet took maternity leave when AK was born. After Desmet went back to work on February 1, 2016, AK began to attend daycare.

After three days at daycare, AK became fussy and sick. Desmet and Kacso took AK to urgent care. The examining doctor diagnosed her with an upper respiratory infection. The musculoskeletal exam was normal. The next day, Desmet stayed home with AK instead of sending her back to daycare.

On February 5, Desmet noticed that AK's left leg looked swollen and felt firm to the touch. Desmet took AK to the emergency department at Mary Bridge Children's Hospital that morning. X-rays revealed that AK had a broken femur. Desmet and Kacso were unable to provide an explanation for AK's injury. Dr. Yolanda Duralde, the director of the Child Abuse Intervention Department at Mary Bridge, reviewed AK's chart and her assessment was "probable inflicted trauma." Clerk's Papers (CP) at 986. Dr. Duralde stated that AK needed to be in a safe environment until an investigation could be done.

A social worker at Mary Bridge reported the injury to CPS. CPS assigned Jennifer Schooler, a social worker, to the case. Schooler interviewed Desmet and Kacso that day. She also recorded Dr. Duralde's belief that the chance that the injury occurred at daycare was minimal.

The KCSO also was contacted. Officers arrived later that evening and interviewed Desmet and Kacso. The officers then decided to take AK into protective custody. Desmet and Kacso were very upset. Kacso's sister agreed to take AK into her custody.

*Dependency Proceedings*

On February 9, Schooler filed a dependency petition with the juvenile court and requested out-of-home placement. On February 10, Desmet and Kacso appeared in juvenile court for the 72-hour shelter care hearing and waived the presentation of evidence. The court entered an agreed shelter care order, which stated, "The child is in need of shelter care because there is reasonable cause to believe: [t]he release of the child would present a serious threat of substantial harm to the child . . . as assessed by Petitioner." CP at 386-87. The shelter care order placed AK with Kacso's sister and authorized liberal supervised visitation rights to Desmet and Kacso.

Desmet and Kacso waived the 30-day shelter care hearing, scheduled for March 8. As a result, the February 10 shelter care order remained in effect. The fact-finding hearing for the dependency was scheduled for April 13.

Desmet and Kacso filed a motion to modify the shelter care order and to return AK to their home. Their supporting evidence included both parents passing polygraph tests, Dr. Duralde's notes stating that this type of injury could be caused by an accident, and an expert opinion from a pediatric orthopedic physician who concluded that AK's injury likely did not result from child abuse. DSHS opposed the motion. DSHS submitted the declaration of a DSHS supervisor on AK's case, and various exhibits.

On April 12, the juvenile court heard oral argument regarding Desmet and Kacso's motion to return AK home and denied the motion. The court's order noted the voluminous

documents that both parties had submitted. The court stated that "based on the current evidence, the cause of [AK's] facture remains unclear (whether forcible or accidental) and without a plausible explanation for same the court finds the reasonable cause standard for continuing shelter care (out of home placement) continues to be met." CP at 419. The order stated that the shelter care order remained in full force and effect, and that Desmet and Kacso had agreed to participate in psychological evaluations as soon as possible.

Desmet and Kacso agreed to two continuances of the fact-finding hearing through August 8. They subsequently completed psychological evaluations. On August 8, all parties agreed that AK could return home based on the results of the evaluations.

The Department ultimately terminated the dependency action on October 24 based on Desmet and Kacso's completion of various court-ordered conditions.

*CPS Founded Letter*

Meanwhile in March, CPS officially had concluded that the allegations of negligent treatment or maltreatment were founded. On March 31, CPS sent a letter informing Desmet of the results of its investigation into AK's injury. The letter stated that CPS had found that Desmet's alleged abuse of AK had occurred. The letter explained that a "founded" determination meant that CPS determined that it was more likely than not that the abuse and/or neglect occurred and that Desmet was the person responsible for the abuse and/or neglect. The founded finding was "based on information collected during the CPS investigation including medical records, polygraph results, law enforcement reports, and expert testimony." CP at 443.

Desmet contested the founded determination in an administrative appeal. The Department eventually changed the founded letter to unfounded several months after the dependency action was dismissed.

*Desmet and Kacso's Lawsuit*

Desmet and Kacso filed a lawsuit against the State, the Department and CPS, asserting claims for negligent investigation, negligent infliction of emotional distress, and invasion of privacy by false light.

The Department filed a summary judgment motion to dismiss all claims, arguing among other things that it had complete immunity against all of Desmet and Kacso's claims under RCW 4.24.595(2). The trial court denied the Department's motion. In an order denying reconsideration, the court directed entry of a final judgment under CR 54(b) on the issue of the Department's claim of immunity under RCW 4.24.595(2). The Department appeals the trial court's denial of its summary judgment motion.

ANALYSIS

A.     SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Freedom Found. v. Bethel Sch. Dist.*, 14 Wn. App. 2d 75, 80, 469 P.3d 364 (2020). Similarly, when a summary judgment order is based on an issue of statutory interpretation, we review the trial court's interpretation of the statute de novo. *Guillen v. Pearson,* 195 Wn. App. 464, 470, 381 P.3d 149 (2016). This appeal turns on interpretation of RCW 4.24.595(2), not on any factual issues. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Freedom Foundation*, 14 Wn. App. 2d at 80; CR 56(c).

B.     LEGAL BACKGROUND

Chapter 26.44 RCW governs the duty to report child abuse or neglect. Chapter 13.34 RCW governs dependency actions. The legislature enacted chapter 26.44 RCW and chapter 13.34 RCW as part of a comprehensive child welfare system that is guided by the principle that

the child's health and safety is of paramount concern. *See* RCW 26.44.010; RCW 13.34.020; *see also H.B.H. v. State*, 192 Wn.2d 154, 164, 429 P.3d 484 (2018). "When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail." RCW 13.34.020.

      1.    Investigation of Child Abuse or Neglect

In 2016, the Department had certain responsibilities regarding the investigation of suspected child abuse or neglect. Former RCW 26.44.030(1)(a) (2015); former RCW 26.44.050 (2012). Currently, the Department of Children, Youth and Families (DCYF) has those responsibilities. RCW 26.44.020(10); RCW 26.44.030(13)(a); RCW 26.44.050.

When persons in certain listed positions, including nurses and social service counselors, have reasonable cause to believe that a child has been abused or neglected, they are required to report the incident to law enforcement or to the Department. RCW 26.44.030(1)(a). A law enforcement officer may take a child into custody without a court order "if there is probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order." RCW 26.44.050. Once a report has been filed, RCW 26.44.050 requires law enforcement or the Department to investigate and "where necessary to refer such report to the court."

After the investigation has been completed, the Department must make a finding that the report of child abuse or neglect is founded or unfounded. RCW 26.44.030(13)(a). "Founded" is defined as "the determination following an investigation by the department that, based on available information, it is more likely than not that child abuse or neglect did occur." RCW 26.44.020(13). "Unfounded" is defined as "the determination following an investigation by the department that available information indicates that, more likely than not, child abuse or neglect

did not occur, or that there is insufficient evidence for the department to determine whether the alleged child abuse did or did not occur." RCW 26.44.020(28). The person named as an alleged perpetrator in the founded letter may challenge that finding. WAC 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.

2.   Dependency Actions

Under RCW 13.34.040(1), the Department may initiate a dependency action when a person suspects that a child has been abused or neglected by a legal parent, guardian, or other custodian. After a dependency petition has been filed, the juvenile court must set a fact-finding hearing within 75 days to determine if a child is dependent. RCW 13.34.070(1). A child is dependent when he or she has been abandoned, abused or neglected by his or her legal guardian, has no legal guardian who is capable of adequately caring for the child, or is receiving extended foster care services. RCW 13.34.030(6).

RCW 13.34.065(1)(a) requires that a shelter care hearing take place within 72 hours of a child's removal from his or her home. "The purpose of the shelter care hearing is to determine whether the child can be immediately and safely returned home while the adjudication of the dependency is pending." RCW 13.34.065(1)(a). At the shelter care hearing, all parties may present testimony regarding the need or lack of need for shelter care. RCW 13.34.065(2)(b). After the juvenile court determines that a child should be placed in shelter care, there is a 30-day second shelter care hearing to evaluate whether the shelter care order should be maintained. RCW 13.34.065(7)(a).

3.   Negligent Investigation Cause of Action

The Supreme Court in *Tyner v. Department of Social and Health Services* recognized that parents suspected of child abuse have an implied cause of action against the Department under RCW 26.44.050 for negligent investigation of child abuse allegations. 141 Wn.2d 68, 82, 1 P.3d

1148 (2000). This negligent investigation cause of action is an exception to the general rule that there is no tort claim for negligent investigation. *McCarthy v. County of Clark*, 193 Wn. App. 314, 328-29, 376 P.3d 1127 (2016).

To prevail on a negligent investigation cause of action, the claimant must show that the Department conducted "an incomplete or biased investigation that 'resulted in a harmful placement decision.' " *Id.* at 329 (quoting *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 601, 70 P.3d 954 (2003)). "A harmful placement decision includes 'removing a child from a nonabusive home, placing a child in an abusive home, or letting a child remain in an abusive home.' " *McCarthy*, 193 Wn. App. at 329 (quoting *M.W.*, 149 Wn.2d at 602)). A claimant also must show that the Department's negligent investigation was a proximate cause of the harmful placement decision. *McCarthy*, 193 Wn. App. at 329.

"A negligent investigation may be the cause in fact of a harmful placement even when a court order imposes that placement." *Id.* "Liability in this situation depends upon what information . . . [the Department] provides to the court. [Citation omitted.] A court order will act as a superseding cause that cuts off liability 'only if all material information has been presented to the court.' " *Id.* at 329-30 (quoting *Tyner*, 141 Wn.2d at 88). Materiality of information generally is a question of fact unless reasonable minds could only reach one conclusion. *McCarthy*, 193 Wn. App. at 330.

C.    IMMUNITY UNDER RCW 4.24.525(2)

The Department argues that it is immune from liability for Desmet and Kacso's negligent investigation, negligent infliction of emotional distress and false light claims under RCW 4.24.595(2), which states that the Department and its employees are not liable for acts performed to comply with court shelter care and dependency orders. We disagree.

### 1. Statutory Interpretation

We review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). To determine legislative intent, we look at the plain language of the statute, consider the text of the provision, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *Id.* We must apply the statute as written; "we cannot rewrite plain statutory language under the guise of construction." *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018). If the plain meaning of the statute is unambiguous, we apply that meaning. *Ronald Wastewater Dist. v. Olympic View Water and Sewer Dist.*, 196 Wn.2d 353, 364, 474 P.3d 547 (2020).

If the plain language of the statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). We resolve ambiguity by considering outside sources that may indicate legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.*

### 2. Statutory Language

RCW 4.24.595 grants immunity in two different situations. First, RCW 4.24.595(1) provides that absent gross negligence, governmental entities and their employees are "not liable in tort for any of their acts or omissions in emergent placement investigations of child abuse or neglect under chapter 26.44 RCW." The statute defines "emergent placement investigations" as "those conducted prior to a shelter care hearing." RCW 4.24.595(1). Desmet and Kacso's

claims relate to the Department's actions after the initial shelter care hearing. Therefore, there is no dispute that RCW 4.24.595(1) does not apply here.

Second, RCW 4.24.595(2) states that the Department and its employees "shall comply with the orders of the court, including shelter care and other dependency orders, and are not liable for *acts performed to comply with such court orders*." (Emphasis added.) RCW 4.24.595(2) also states that "[i]n providing reports and recommendations to the court," the Department's employees "are entitled to the same witness immunity as would be provided to any other witness."

When the legislature enacted RCW 4.24.595 in 2012, it also enacted RCW 26.44.280. That statute states:

> Consistent with the paramount concern of the department to protect the child's interests of basic nurture, physical and mental health, and safety, and the requirement that the child's health and safety interests prevail over conflicting legal interests of a parent, custodian, or guardian, the liability of governmental entities, and their officers, agents, employees, and volunteers, to parents, custodians, or guardians accused of abuse or neglect is limited as provided in RCW 4.24.595.

RCW 26.44.280.

3. Negligent Investigation Claim

RCW 4.24.595(2) grants immunity to the Department for "acts performed to comply" with court shelter care and dependency orders. The Department argues that this language provides immunity from negligent investigation liability any time an alleged harmful placement decision results from a court order.

But the plain language of RCW 4.24.595(2) is inconsistent with this argument. Desmet and Kacso's negligent investigation claim is not based on the Department's compliance with court orders. Instead, their claim is based on the Department's alleged failure to conduct a complete and accurate investigation of the abuse allegation against Desmet and the Department's

11

alleged act of providing false information and misrepresenting evidence to the juvenile court. No court order directed the Department to engage in such conduct.

The Department emphasizes that at all times it was complying with the juvenile court's orders regarding the out-of-home placement of AK and when she could return home. But Desmet and Kacso are not claiming that the Department should have disregarded the court's placement orders. They are claiming that the Department's negligent investigation caused the court to issue those orders.

The Department also argues that RCW 4.24.595(2) reflects the legislature's determination that child safety should prevail over the rights of the child's parents. The Department cites RCW 26.44.280, which states that because a child's health and safety interests prevail over the parents' conflicting legal interests, the liability of governmental entities to parents "is limited as provided in RCW 4.24.595." But RCW 26.44.280 does not state that the Department is immune from negligent investigation liability, only that RCW 4.24.595 limits liability. And as noted above, the plain language of RCW 4.24.595(2) does not eliminate negligent investigation liability.

Ultimately, the Department's argument and the dissent's analysis are based on what the Department *wishes* that RCW 4.24.595(2) stated. The Department suggests that RCW 4.24.595(2) eliminates the negligent investigation cause of action under *Tyner*. Similarly, the Department suggests that RCW 4.24.595(2) precludes the recovery of any damages that result from a court placement order. But if the legislature had intended those results, it certainly would have adopted more specific language. After all, RCW 4.24.595(1) does provide blanket immunity for *any* acts by the Department in emergent placement investigations. The legislature did not include similar language in RCW 4.24.595(2).

And the dissent's discussion of the legislative history is immaterial because the language actually used in RCW 4.24.595(2) is unambiguous. Therefore, we must apply the statute's plain language as written. *Ronald Wastewater Dist.*, 196 Wn.2d at 364. If the legislature had intended something different, it would have used different language.

We conclude that RCW 4.24.595(2) unambiguously does not provide immunity for Desmet and Kacso's negligent investigation claim. The statutory language is clear: immunity extends only to the Department's acts *performed to comply with court orders*. Here, the Department's investigation of the abuse claims against Desmet was not performed to comply with court orders. The Department's duty to investigate arises under RCW 26.44.050, independent of any court order. *McCarthy*, 193 Wn. App. at 328. And the Department did not provide information to the juvenile court in order to comply with a court order.

Accordingly, we hold that the trial court did not err in denying the Department's summary judgment motion regarding immunity under RCW 4.24.595(2) for that claim.[2]

4.    Negligent Infliction of Emotional Distress and False Light Claims

The Department argues that RCW 4.24.595(2) also applies to Desmet and Kacso's claims for negligent infliction of emotional distress and invasion of privacy by false light. We disagree.

A negligent infliction of emotional distress requires proof of negligence (duty, breach of the standard of care, proximate cause, and damage) and objective symptomatology. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 505, 325 P.3d 193 (2014). Objective symptomology requires emotional distress that is susceptible to medical diagnosis and can be proved through medical evidence. *Id.* at 506.

---

[2] We emphasize that we are addressing only immunity under RCW 4.24.595(2), not the merits of Desmet and Kacso's negligent investigation claim.

An invasion of privacy by false light claim arises "when a defendant publishes statements that place a plaintiff in a false light if (1) the false light would be highly offensive and (2) the defendant knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in." *Seaquist v. Caldier*, 8 Wn. App. 2d 556, 564, 438 P.3d 606, *review denied,* 193 Wn.2d 1041 (2019).

Desmet and Kacso base their emotional distress claim on their general allegations that the Department engaged in negligent conduct and possibly on the Department's founded finding. They base their false light claim on the founded finding. For the same reasons discussed above, RCW 4.24.595(2) does not provide immunity for these claims. The statutory language extends immunity only to the Department's acts performed to comply with court orders. Here, the alleged negligence giving rise to the emotional distress claim did not arise from compliance with a court order. And the Department's issuance of a founded finding against Desmet was not performed to comply with a court order.

Accordingly, we hold that the trial court did not err in denying the Department's summary judgment motion regarding immunity under RCW 4.24.595(2) for Desmet and Kacso's negligent infliction of emotional distress and false light claims.[3]

5. Witness Immunity

In its reply brief, the Department suggests that to the extent its employees provided false testimony to the juvenile court, the Department is immune from liability under the witness immunity provision of RCW 4.24.595(2). We decline to address this argument.

---

[3] Again, we emphasize that we are addressing only immunity under RCW 4.24.595(2), not the merits of Desmet and Kacso's false light and negligent inflection of emotional distress claims.

As noted above, RCW 4.24.595(2) states that "[i]n providing reports and recommendations to the court," the Department's employees "are entitled to the same witness immunity as would be provided to any other witness." The Department appears to argue that even though this clause is expressly limited to its employees, witness immunity should extend to the Department as well.

We decline to address this argument for two reasons. First, the Department did not make this argument in the trial court. We generally do not consider arguments raised for the first time on appeal. RAP 2.5(a); *Kave v. McIntosh Ridge Primary Road Ass'n*, 198 Wn. App. 812, 823, 394 P.3d 446 (2017). Second, the Department did not raise this argument until its reply brief. We generally do not consider arguments raised for the first time in a reply brief. *In re Vulnerable Adult Petition for Winter*, 12 Wn. App. 2d 815, 842, 460 P.3d 667, *review denied,* 196 Wn.2d 1025 (2020).

D.    LIABILITY ON THE MERITS

The Department argues in the alternative that even if there is no immunity under RCW 4.24.595(2) for Desmet and Kacso's negligent investigation claim, we should conclude that DSHS is entitled to summary judgment on the merits of that claim. The Department argues that (1) the Department did not present false testimony or misrepresent evidence to the juvenile court; (2) Desmet and Kacso's agreement to place AK with Kacso's sister precludes them from bringing a negligent investigation cause of action under *Roberson v. Perez*, 156 Wn.2d 33, 46, 123 P.3d 844 (2005); (3) the fact that Desmet and Kacso agreed to a number of the juvenile court's orders precludes them from claiming damages; and (4) the juvenile court had all available material facts, which breaks the chain of causation.

The Department also argues that Desmet and Kacso cannot recover damages for negligent infliction of emotional distress or false light based on DSHS's founded finding because (1) the founded finding did not cause any damages, (2) Desmet and Kacso obtained relief – removal of the founded finding – through their administrative appeal, and (3) there is no separate cause of action for any damages related to the founded finding.

We decline to address these arguments because they are beyond the scope of the trial court's CR 54(b) order, which is limited to whether the Department has immunity under RCW 4.24.595(2) against Desmet and Kacso's claims. *See Dreiling v. Jain*, 151 Wn.2d 900, 907, 918-19, 93 P.3d 861 (2004).

## CONCLUSION

We affirm the trial court's denial of the Department's summary judgment motion on the issue of immunity under RCW 4.24.595(2) for Desmet and Kacso's claims and remand for further proceedings.

_____
MAXA, J.

I concur:

_____
SUTTON, A.C.J.

16

GLASGOW, J. (dissenting in part)—I agree with the majority that RCW 4.24.595 does not bar Michelle A. Desment's and Sandor Kacso's (Desmets) false light claim, nor does it entirely bar their negligent investigation claim established under *Tyner v. Department of Social & Health Services*, 141 Wn.2d 68, 82, 1 P.3d 1148 (2000). I would conclude, however, that the plain language of RCW 4.24.595 limits the Department's liability to a greater extent than the majority concludes. I would recognize that while the Desmets may be entitled to damages based on other harms resulting from the Department's actions, they cannot recover for damages allegedly resulting from AK's continued placement outside of her home pursuant to court orders.

RCW 4.24.595(2) states that the Division of Children, Youth and Families and its employees "shall comply with the orders of the court, including shelter care and other dependency orders, and are not liable for *acts performed to comply with such court orders*." (Emphasis added.) The agreed initial placement of AK outside of the Desmets' home with her aunt, and ongoing placement of AK with her aunt during the dependency, were "acts performed to comply with [the trial court's] orders" under RCW 4.24.595(2). AK's placement in compliance with shelter care and dependency orders cannot be the basis for liability for damages under the plain language of the statute.[4]

Damages for other harms remain unimpeded by the immunity established in RCW 4.24.595(2). For example, the complaint alleges the Desmets suffered "false light in their community, their circle of friends, and their family from the unsupported and unfounded allegations alleged against them." Clerk's Papers at 168. The Desmets also claim that loss of

---

[4] An immunity statute can provide limited immunity against a particular type of damages or relief, rather than immunity against an entire claim. *See, e.g.*, *Cowell v. Good Samaritan Cmty. Health Care*, 153 Wn. App. 911, 924 n.15, 225 P.3d 294 (2009) (concluding that the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-11152, provided immunity from damages but not from injunctive relief).

employment and ongoing inability to obtain employment were harms that resulted from the Department's allegations. If they prevail on their claim of negligent investigation or false light, they could recover for damages to their reputation suffered as a result of the Department's allegations and its temporary founded finding that child abuse or neglect occurred.[5]

RCW 4.24.595(2) limits the *Tyner* negligent investigation cause of action, but that is exactly what the legislature intended the statute to do. The provisions codified in RCW 4.24.595 were proposed in Engrossed Substitute House Bill (ESHB) 2510, section 3, and the language from that bill was eventually incorporated in its entirety into a different bill, Engrossed Substitute Senate Bill (ESSB) 6555, on the house floor. ESHB 2510, 62nd Leg. Reg. Sess. (Wash. 2012); ESSB 6555, 62nd Leg. Reg. Sess. (Wash. 2012). Legislative history, including bill reports and committee testimony on ESHB 2510, reflects that the legislature was concerned with eliminating the competing incentives that *Tyner* created.

After *Tyner,* the legislature understood that the Department could be liable for negligently failing to remove a child from a dangerous home and for negligently removing a child from a home that turned out not to be dangerous. Hr'g on ESHB 2510 Before the H. Judiciary Comm., 62nd Leg. Reg. Sess. (Wash. Jan. 25, 2012), at 56 min., 0 sec., *audio recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2012011124; S.B. REPORT ON ESHB 2510, 62nd Leg. Reg. Sess. (Wash. 2012), at 2. The legislature amended the child abuse statute's purpose section to emphasize that concern for the safety of children is paramount and child safety outweighs concerns for the rights of the parents. ESSB 6555, *supra*, § 12; ESHB 2510, *supra*, § 1. This amendment was intended to respond to the *Tyner* court's reliance on other

---

[5] In contrast, the claim for negligent infliction of emotional distress in the complaint is currently based solely on the loss of the parent child relationship during the separation. This claim, based *solely* on AK's placement in compliance with court orders, is entirely barred by RCW 4.24.595(2).

language in that purpose section discussing the importance of the family unit and the parent child bond to create conflicting obligations to both parents and children when child abuse or neglect is reported. Hr'g on ESHB 2510, *supra*, at 53 min., 0 sec.

The prime sponsor of ESHB 2510, Representative Ruth Kagi, and others testifying in committee expressed that the intent behind the immunity language was to limit the impact of *Tyner* and to use the immunity statute to ensure the Department errs on the side of child safety when placing children outside of the home. *Id.* at 56 min., 0 sec. through 59 min., 0 sec. and 1 hr., 4 min., 3 sec. through 1 hr., 4 min., 6 sec. (explaining that the bill would "restore what the law was prior to [the] *Tyner"* decision, and emphasizing that immunity would not protect the Department or its employees if they fabricated evidence or committed perjury).[6]

Thus, the legislature struck a balance by creating limited immunity that eliminates the possibility of damages arising from placement of a child after allegations of abuse—either initial placement in response to a report of abuse or neglect or later placement ordered by a court. This balance emphasizes and protects child safety by removing a disincentive to temporarily place a child outside the home or to ask a court to approve temporary out-of-home placement. It removes the threat of having to pay damages if a jury later finds, with the benefit of hindsight, that the out-of-home placement was not actually necessary. But the legislature left intact a parent's ability to recover for other harms. And the immunity statute does not protect a social worker or other Department employee who fabricates evidence or lies in court.

I would hold that the Department is immune from payment of damages resulting from the placement of AK outside of her home as a result of a court order in this case, but if the Desmets

---

[6] Representatives of the Washington State Association for Justice also testified *in favor of* the immunity language because it was a reasonable way to ensure the safety of children. "Children's safety is the number one priority." Hr'g on ESHB 2510, *supra*, at 1 hr., 11 min., 0 sec.

prove their claims, they may be entitled to damages for other harms arising from false light or negligent investigation. I respectfully dissent in part.

_____
Glasgow, J.