IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WEIDNER PROPERTY MANAGEMENT, LLC, a Washington limited liability company, d/b/a Riverside 9 Apartment Homes, | ) ) ) ) | No. 39121-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER DENYING MOTION |
| v. | ) | FOR RECONSIDERATION |
| | ) | AND AMENDING OPINION |
| BRIAN CUTSFORTH and JENA KINCHELOE and all other occupants of 895 Riverside Dr., #D252, Wenatchee, Washington, | ) ) ) ) ) | |
| | ) | |
| Appellants. | ) | |

THE COURT has considered respondent's motion for reconsideration of our November 7, 2023 opinion.

IT IS ORDERED, the motion for reconsideration is denied and the opinion shall be amended as follows:  The third sentence of the first paragraph on page 20 is removed and the following sentence is substituted:

RCW 59.18.410(2) controls after service of the notice to pay or vacate when compromise is less desirable.

PANEL:  Judges Fearing, Lawrence-Berrey, Birk

FOR THE COURT:

_____
GEORGE B. FEARING, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WEIDNER PROPERTY MANAGEMENT, LLC, a Washington limited liability company, d/b/a Riverside 9 Apartment Homes, | ) ) ) ) | No. 39121-3-III |
| Respondent, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| BRIAN CUTSFORTH and JENA KINCHELOE and all other occupants of 895 Riverside Dr., #D252, Wenatchee, Washington, | ) ) ) ) ) ) | |
| Appellants. | ) ) | |

FEARING, C.J. — In 2021, the Washington legislature, in the face of the continuing COVID-19 pandemic, adopted RCW 59.18.630, designed to keep renters housed by requiring a landlord to offer a reasonable proposal for repayment of defaulted rent and to cooperate with an emergency rental assistance program. RCW 59.18.410(2), however, an older statute, does not require the landlord to agree to new lease terms as a condition to accepting rent payments from an emergency rental assistance program. We must resolve the tension between the two statutes. In this appeal, a landlord and tenants ask us to determine if the landlord's denial of new lease terms should be considered when assessing whether the landlord acted reasonably in offering a repayment plan under

RCW 59.18.630 or whether RCW 59.18.410(2) excuses the landlord from otherwise accepting a reasonable offer from the tenants for repayment of the defaulted rent because a rental assistance program, from which the tenants seek aid, demands additional terms. We hold that the program's demand for new lease terms does not automatically excuse the landlord from accepting rental payments made using rental assistance, but rather constitutes one factor for the trial court to consider when assessing the reasonableness of repayment proposals. We remand for further proceedings.

FACTS

On August 23, 2021, Brian Cutsforth and Jena Kincheloe, as tenants, and Weidner Property Management, LLC (Weidner), as landlord, entered a one-year lease running from September 7, 2021 to September 6, 2022. The lease covered an apartment in Wenatchee. Tenants agreed to pay rent at $1,830 per month.

When Brian Cutsforth and Jena Kincheloe moved into the apartment, Cutsforth worked as a night auditor at a La Quinta Inn, and Kincheloe served as a housekeeper at the same motel. Their collective income allowed payment of the apartment rent.

Illness struck within weeks of Brian Cutsforth and Jena Kincheloe moving into the apartment. Cutsforth was bedridden for seven weeks. Cutsforth tested negatively for COVID-19, but he suffered symptoms common for those stricken with the virus. Cutsforth could not taste food, faced weakness and exhaustion, and ran fevers. His high fevers prevented his working at his job and resulted in his loss of employment at LaQuinta.

2

Jena Kincheloe encountered symptoms of asthma. A physician diagnosed her with Chronic Obstructive Pulmonary Disease (COPD). The lung condition progressively worsened, and Kincheloe lost stamina. She could no longer perform her duties as a housekeeper and also lost employment. With both Kincheloe and Cutsforth unemployed, the couple could no longer afford to pay rent.

In December 2021, Brian Cutsforth and Jena Kincheloe submitted a Treasury Renat Assistance Program (T-RAP) rent payment agreement application form to the Washington State Department of Commerce (DOC). The submittal sought rent assistance for the months of October, November, and December 2021 in an amount totaling $5,280. Landlord Weidner also signed the application. With its signature, Weidner agreed to accept additional terms outlined on the form, which included accepting $5,067 as full satisfaction of Cutsforth and Kincheloe's past-due rent. DOC approved the application. DOC paid Weidner $5,067.

Brian Cutsforth and Jena Kincheloe defaulted on rent again in January 2022, and Weidner offered a rent repayment plan on January 7. Cutsforth and Kincheloe accepted the repayment plan on January 19. Cutsforth and Kincheloe made no additional payments after accepting the repayment plan, and, when they failed to pay rent yet again for the month of February, Weidner served a notice to pay or vacate. Under the Eviction Resolution Pilot Program (ERPP) requirements, outlined in RCW 59.18.660, Weidner needed to secure a certificate of participation with the program before proceeding with an unlawful detainer action. *See* RCW 59.18.660(5). A Wenatchee dispute resolution

center issued the requisite certificate on March 28, 2022 after conducting mediation between the tenants and landlord.

On April 6, 2022, landlord Weidner offered tenants Brian Cutsforth and Jena Kincheloe another repayment plan. On that date, Cutsforth and Kincheloe owed $7,600.95 in back rent for January through April 2022. The plan required that Cutsforth and Kincheloe pay the past-due rent at a rate of $609.99 per month beginning on May 8, 2022 and on the eighth of each month thereafter. Payments would extend for thirteen months and end after the lease term expired.

Also on April 6, Brian Cutsforth and Jenna Kincheloe met with and sought from the Chelan-Douglas Community Action Council (CDCAC) emergency rental assistance. CDCAC contracted with DOC to administer Washington State's emergency rental assistance program.

Brian Cutsforth and Jena Kincheloe returned to Weidner a counteroffer that offered to repay past-due rent with emergency rental assistance from CDCAC and from a second organization in the event their remaining debt exceeded what CDCAC would cover. CDCAC conditioned payment of funds, however, upon Weidner signing an agreement that contained terms beyond the August 2021 lease terms between Weidner and tenants Cutsforth and Kincheloe. Among other new terms, Weidner needed to refrain from charging any late fees, withhold rent increases for six months, allow six months of occupancy except for serious lease violations, and supply CDCAC a copy of

Weidner's lease agreement with Cutsforth and Kincheloe. Weidner refused to agree to the additional terms on which CDCAC conditioned receipt of the funding.

PROCEDURE

On May 9, 2022, Weidner Property Management filed an unlawful detainer complaint against Brian Cutsforth and Jena Kincheloe. The trial court initially scheduled a show cause hearing for May 27, but continued the hearing twice and until June 27.

Brian Cutsforth and Jena Kincheloe submitted a memorandum to the trial court in which they argued for dismissal of the unlawful detainer action because Weidner violated RCW 59.18.630(3)(c) by rejecting emergency rental assistance for repayment of past-due rent and because the April 2022 repayment plan offered by Weidner was not reasonable under RCW 59.18.630. Cutsforth and Kincheloe later counterclaimed for source of income discrimination in violation of RCW 59.18.255(4). Weidner replied that, under RCW 59.18.410(2), it had no obligation to accept new lease terms as a condition to accepting past-due rent from a third party and its rejection of the new lease terms lacked relevance when determining the reasonableness of repayment proposals under RCW 59.18.630.

On June 30, 2022, the trial court delivered an oral ruling on the issues raised at the May 27 hearing. The court remarked:

> [THE COURT:] Issue number three. The non-acceptance of
> conditions of funding. And that deals—that issue deals with RCW
> 59.18.410. And specifically (2) of which I want to read the relevant portion
> of that. It says . . . the landlord shall accept any written pledge of
> emergency rental assistance funds provided to the tenant from a

5

governmental or non-profit entity after the expiration of the pay or vacate notice if the pledge will contribute to the total payment of both the amount of rent due, including any current rent and other amounts if required under this subsection. . . . [B]y accepting such pledge of emergency rental assistance, the landlord is not required to enter into any additional conditions not related to the provisions of necessary payment, information and documentation.

And here, the Court—the evidence was presented that the—the Chelan Douglas Community Action Council proposal, the standard one, I think that they use—it appears to the Court in almost every case does have those additional conditions, specifically, the condition the landlord must accept not to move for eviction or do those types of proceedings for an additional six[-]month period. And the six[-]month period was an additional condition the court finds to—not related to the provision of necessary payment, information, and documentation.

And therefore, the Court is finding that RCW 59.18.410[(2)], provides the landlord with the authority to reject the rental assistance funds in this case from the Chelan Douglas Community Action Council.

Report of proceedings (RP) at 115-16.

THE COURT: . . . And then the—the other issue is the RCW 59.18.630. The objection was to or the issue was, did the repayment plan offered by the landlord in this case comply with that statute? Specifically, subparagraph well, all of that statute, basically. And the requirements, in part, are that any replacement plan entered into this—under the section must not require payment until 30 days after repayment is offered to the tenant, cover rent only and not only late fees, attorneys fees or other fees and charges, allow for payments of any source of income as defined in RCW 59.18.255 or from pledges by nonprofit organizations, churches, religious institution or governmental entities. And there's other provisions as well, which I don't think are relevant in this case. I mean they are relevant, but the Court's finding is that the repayment plan that was offered, I think it might have been attached to the summons and complaint, it does comply with that statute.

And so, the Court is finding that the repayment plan that was offered by the landlords in this case complied with RCW 59.18.630. And that is the Court's holding on that.

RP at 118-19.

The trial court signed an order for a writ of restitution and entered a judgment for Weidner Property Management against Brian Cutsforth and Jena Kincheloe for $13,304.89 in rent owed, $257.00 in costs, and $17,130.00 in attorney fees. The amounts total $30,691.89.

Brian Cutsforth and Jena Kincheloe moved for an immediate stay to allow them to file a motion to reconsider and, depending on what they uncovered through legal research, to appeal the trial court's decision to this court. The trial court requested briefing from the parties on the motions and set a hearing for July 13.

On July 12, 2022, Brian Cutsforth and Jena Kincheloe filed a "Motion, Declaration, and Legal Authority to Stay Writ of Restitution Pending Reconsideration and Application to Landlord Mitigation Program," in which they requested relief from the trial court's judgment pursuant to RCW 59.18.410(3). Cutsforth and Kincheloe also requested that the trial court issue a stay of enforcement on the judgment and on the writ of restitution to allow them the opportunity to apply for relief through the landlord mitigation fund, created under RCW 43.31.605.

On July 13, 2022, the trial court denied the motion for reconsideration. The trial court, however, granted Brian Cutsforth and Jena Kincheloe a stay of enforcement of the writ of restitution under RCW 59.18.410(3) that effectively permitted Cutsforth and Kincheloe to remain in possession of the apartment for two more months and until the lease ended in September 2022. The trial court also stayed enforcement of the monetary judgment for the purpose of affording Cutsworth and Kincheloe an opportunity to apply

for disbursement of funds from the landlord mitigation program account established under RCW 43.31.605 and operated by DOC. The stay order read that, a failure of Cutsworth and Kincheloe to submit or cooperate in the submission of the application for the mitigation program would result in the vacation of the stay. Our record does not show whether the program disbursed funds to satisfy the judgment, let alone whether Cutsworth and Kincheloe applied for this financial assistance. The order of stay allowed Weidner to reactivate the writ of restitution if funds were not disbursed within thirty days.

## LAW AND ANALYSIS

On appeal, Brian Cutsforth and Jena Kincheloe repeat the same arguments forwarded before the trial court. Cutsworth and Kincheloe argue that the trial court erred in concluding that RCW 59.18.410(2) permitted Weidner to refuse to accept emergency rental assistance when CDCAC demanded new lease terms. Cutsforth and Kincheloe argue that RCW 59.18.630 trumps RCW 59.18.410(2) and that a reasonable proposal for repayment of rent would include Weidner agreeing to additional lease terms. The couple also argue that, regardless of the application of RCW 59.18.410(2), the trial court erred in finding that Weidner's offered repayment plan was reasonable when it required that tenants experiencing unemployment due, in part, to COVID-related illness, pay an additional $609.99 per month beginning as soon as the following month. At oral argument, Cutsworth and Kincheloe's counsel agreed that the tenants have moved from the apartment and no longer seek to reverse the writ of restitution. Wash. Court of

Appeals oral argument, *Weidner Property Management, LLC v. Cutsworth*, No. 39121-3-III (September 6, 2023) at 3:15 to 4:00 (on file with the court). Cutsforth and Kincheloe also contend an issue of fact exists as to whether Weidner violated RCW 59.18.255(4) by discriminating on the basis of the source of income.

In response, Weidner Property Management argues that this appeal should be dismissed under RAP 3.1, RAP 2.5(b)(1)(ii), and RAP18.9(c)(2). In the event this court determines that this appeal should not be dismissed under either statute, Weidner argues that the trial court did not err in its decision because, under RCW 59.18.410(2), a landlord need not accept emergency rental assistance if it does not wish to agree to additional mandatory terms unrelated to the provision of necessary financial information and documentation. Finally, Weidner contends it offered a reasonable payment plan in compliance with RCW 59.18.630 and did not discriminate based on the source of income.

Dismissal of Appeal

We first address Weidner Property Management's contention that we should dismiss the appeal without addressing the merits. Weidner elicits RAP 2.5(b)(1)(ii), RAP 3.1, and RAP 18.9(c)(2) to this end. We discuss the rules in ordinal numerical order.

RAP 2.5(b) declares:

> (b) Acceptance of Benefits. (1) Generally. A party may accept the benefits of a trial court decision without losing the right to obtain review of that decision only (i) if the decision is one that is subject to modification by the court making the decision or (ii) if the party gives security as provided in subsection (b)(2) or (iii) if, regardless of the result of the review based

9

> solely on the issues raised by the party accepting benefits, the party will be entitled to at least the benefits of the trial court decision or (iv) if the decision is one that divides property in connection with a dissolution of marriage, a legal separation, a declaration of invalidity of marriage, or the dissolution of a committed intimate relationship.

(Emphasis omitted.)

Weidner argues that, because the trial court granted Brian Cutsforth and Jena Kincheloe's motion to stay the judgment, they cannot appeal the trial court's decision. Weidner equates the entry of the stay to the acceptance of benefits. Cutsforth and Kincheloe argue that they received no benefits within the meaning of RAP 2.5(b)(1)(ii) since the trial court's judgment was adverse to them. They also argue that they were not required to give security because this case was not one in which restitution may be required. We agree with the couple's first contention.

The order of stay may have benefited Brian Cutsforth and Jena Kincheloe but not in the nature contemplated by RAP 2.5(b)(1). Cutsworth and Kincheloe received no affirmative benefit by the stay, only a benefit that temporarily postponed a detriment. The pair received no money from Weidner as a result of the stay, which money they would need to repay if this court reverses the trial court. The primary purpose of RAP 2.5(b) is to ensure that a party seeking review will be able to make restitution if a decision is reversed or modified on appeal. *Kruse v. Hemp*, 121 Wn.2d 715, 720, 853 P.2d 1373 (1993); *Scott v. Cascade Structures*, 100 Wn.2d 537, 541, 673 P.2d 179 (1983).

10

By now Weidner may have received the defaulted rent from DOC. If not, Weidner could engage in actions to collect the judgment against Brian Cutsworth and Jena Kincheloe.

The second posited rule is RAP 3.1. RAP 3.1 provides that only an "aggrieved party" may seek review by the appellate court. This court stated in a recent opinion:

> [A]n "aggrieved party" is one who can appeal a decision because it adversely affects that party's property or pecuniary rights, or a personal right, or imposes on a party a burden of obligation—conversely, a party is not aggrieved by a favorable decision and cannot appeal from such a decision.

*Shepler v. Terry's Truck Center, Inc.*, 25 Wn. App. 2d 67, 79, 522 P.3d 126 (2022).

Weidner argues that Brian Cutsforth and Jena Kincheloe are not aggrieved parties within the meaning of RAP 3.1 because the trial court granted their motion for relief from judgment, in which Cutsforth and Kincheloe requested the trial court impose a stay of enforcement on the judgment and a stay on the execution of the writ of restitution to allow them to apply to the landlord mitigation fund established under RCW 43.31.605. Weidner asserts that, because Cutsforth and Kincheloe are not aggrieved parties, this appeal should be dismissed under RAP 3.1. Cutsforth and Kincheloe, on the other hand, argue that they are aggrieved parties because the trial court found them liable to Weidner for past-due rent, attorney fees, and costs totaling $30,691.89, a decision that substantially affected their pecuniary interests. They assert that, although the trial court allowed them to apply to the landlord mitigation fund to satisfy the $30,000 judgment against them, they are obligated to reimburse DOC for any funds disbursed to Weidner.

To repeat, we do not know whether the mitigation fund satisfied the judgment owed by Brian Cutsforth and Jena Kincheloe. RCW 43.31.605(b)(iii) confirms the duty to repay DOC for any funds disbursed to the landlord. We proceed as if Cutsworth and Kincheloe either owe DOC or Weidner the amount. Therefore, the pair qualify as aggrieved parties.

RAP 18.9(c) reads:

> Dismissal on Motion of Party. The appellate court will, on motion of a party, dismiss review of a case . . . if the application for review is . . . moot.

Weidner argues that this appeal should be dismissed as moot because Brian Cutsforth and Jena Kincheloe obtained a stay that allowed them to remain in possession of the apartment until their lease expired in September 2022 and the two have since vacated the premises. Cutsworth and Kincheloe agree any relief from the writ of restitution is moot, but they emphasize the judgment imposed on them. We agree the pending judgment does not moot the entire appeal.

*IBF, LLC v. Heuft*, 141 Wn. App. 624, 174 P.3d 95 (2007) controls the question of mootness. In *IBF, LLC v. Heuft*, Carmen Heuft leased a commercial space from IBF. Heuft did not pay rent for three months. IBF delivered to Heuft a three-day notice to vacate the premises or pay rent although, under the parties' signed lease, Heuft was entitled to a ten-day notice. Because Heuft neither vacated the premises nor paid rent, IBF initiated an unlawful detainer action against her.

12

On appeal, IBF argued mootness because Carmen Heuft did not seek possession of the subject premises. In response to IBF's argument, this court wrote:

> Heuft is arguing that the *process* of her eviction was improper, and therefore there is no basis for the eviction, the judgment against her or for the attorney fees award. Because the court entered a monetary judgment against Heuft, which went beyond the mere issue of possession, this case is not moot.

*IBF, LLC v. Heuft*, 141 Wn. App. 624, 631 (2007).

### Reasonable Repayment Offer

The substance of this appeal requires a deft reading of two statutes concerning rental assistance programs adopted by the Washington State Legislature to help defaulting tenants in an era of rising housing costs and housing shortages. We must merge and then dissect RCW 59.18.410(2) and RCW 59.18.630.

RCW 59.18.410(2) governs in part the process of eviction from leased residences after a finding of a failure to pay rent. The statute allows, after entry of a judgment for the rent, the tenant to remain on the premises by providing a pledge of financial assistance under an emergency rental assistance program administered by the government or a nonprofit entity. The statute reads, in part:

> If a tenant seeks to restore his or her tenancy and pay the amount set forth in this subsection with funds acquired through an emergency rental assistance program provided by a governmental or nonprofit entity, the tenant shall provide a copy of the pledge of emergency rental assistance provided from the appropriate governmental or nonprofit entity and have an opportunity to exercise such rights under this subsection, which may include a stay of judgment and provision by the landlord of documentation necessary for processing the assistance. . . . The landlord shall accept any written pledge of emergency rental assistance funds provided to the tenant

13

> from a governmental or nonprofit entity after the expiration of the pay or vacate notice if the pledge will contribute to the total payment of both the amount of rent due, including any current rent, and other amounts if required under this subsection. . . . *By accepting such pledge of emergency rental assistance, the landlord is not required to enter into any additional conditions not related to the provision of necessary payment information and documentation.*

(Emphasis added.) The legislature adopted the section permitting payment by an emergency rental assistance program, plus the landlord's right to refuse new lease terms in 2020. 2020 c 315 § 5. Consistent with RCW 59.18.410(2), the trial court ruled that Weidner Property Management need not have agreed to the additional terms demanded by CDCAC such as allowing six months of occupancy except for certain lease violations.

We continue our analysis with RCW 59.18.630 enacted by the legislature in 2021 because of the COVID-19 pandemic. The statute governed nonpayment of rent during the time of Washington State eviction moratorium and six months thereafter. Beginning with subsection 2, the lengthy statute reads:

> (2) If a tenant has remaining unpaid rent that accrued between March 1, 2020, and six months following the expiration of the eviction moratorium or the end of the public health emergency, whichever is greater, *the landlord must offer the tenant a reasonable schedule for repayment of the unpaid rent* that does not exceed monthly payments equal to one-third of the monthly rental charges during the period of accrued debt. If a tenant fails to accept the terms of a reasonable repayment plan within 14 days of the landlord's offer, the landlord may proceed with an unlawful detainer action as set forth in RCW 59.12.030(3) but subject to any requirements under the eviction resolution pilot program established under RCW 59.18.660. . . . The court must consider the tenant's circumstances, including decreased income or increased expenses due to COVID-19, and the repayment plan terms offered during any unlawful detainer proceeding.
> (3) Any repayment plan entered into under this section must:

(a) Not require payment until 30 days after the repayment plan is offered to the tenant;

(b) Cover rent only and not any late fees, attorneys' fees, or any other fees and charges;

(c) Allow for payments from any source of income as defined in RCW 59.18.255(5) or from pledges by nonprofit organizations, churches, religious institutions, or governmental entities; and

(d) Not include provisions or be conditioned on: The tenant's compliance with the rental agreement, payment of attorneys' fees, court costs, or other costs related to litigation if the tenant defaults on the rental agreement; a requirement that the tenant apply for governmental benefits or provide proof of receipt of governmental benefits; or the tenant's waiver of any rights to a notice under RCW 59.12.030 or related provisions before a writ of restitution is issued.

(4) It is a defense to an eviction under RCW 59.12.030(3) that a landlord did not offer a repayment plan in conformity with this section.

(5) To the extent available funds exist for rental assistance from a federal, state, local, private, or nonprofit program, the tenant or landlord may continue to seek rental assistance to reduce and/or eliminate the unpaid rent balance.

(Emphasis added.) RCW 59.18.255(5), referenced in RCW 59.18.630(3)(c), defines

"source of income" as including "benefits or subsidy programs including housing

assistance, public assistance, *emergency rental assistance. . . .*" (Emphasis added).

Our state's legislature expressed the intent behind RCW 59.18.630:

provide legal representation for qualifying tenants in eviction cases, establish an eviction resolution pilot program to address nonpayment of rent eviction cases before any court filing, *and ensure tenants and landlords have adequate opportunities to access state and local rental assistance programs to reimburse landlords for unpaid rent and preserve tenancies.*

LAWS OF 2021, ch. 115, § 1 (emphasis added).

The trial court also ruled that Weidner Property Management offered a reasonable

payment plan. In its oral ruling, the court did not expressly address any interface

15

between RCW 59.18.410(2) and RCW 59.18.630. The trial court impliedly ruled that, as part of a reasonable proposal for repayment, the landlord need not accept new lease terms demanded by the administrator of an emergency rental assistance program. Nevertheless, the trial court did not explicitly declare that the landlord always acts reasonably, under RCW 59.18.630, when declining to accept funds from an entity requiring new lease terms. And the trial court did not expressly weigh the demand of CDCAC for new terms as one factor in determining the reasonableness of Weidner's offer and refusal to accept a counteroffer.

On appeal, Brian Cutsforth and Jena Kincheloe argue that requiring landlords to accept the mandatory conditions accompanying emergency rental assistance furthers the legislative purpose of RCW 59.18.630. According to Cutsforth and Kincheloe, the legislature deliberately omitted in RCW 59.18.630 an exception or limitation allowing landlords to refuse emergency rental assistance upon being required to accept additional mandatory terms in order to receive the assistance. Therefore, RCW 59.18.410(2)'s limitation does not apply to RCW 59.18.630. Finally, according to Cutsforth and Kincheloe, Weidner's rejection of emergency rental assistance violated RCW 59.18.630 and RCW 59.18.255. Weidner responds that RCW 59.18.410(2) allows housing providers to refuse to accept conditions unrelated to the provision of necessary payment information and documentation and that such refusal does not turn any repayment plan offer into an unreasonable offer.

16

The Residential Landlord Tenant Act of 1973 (RLTA), chapter 59.18 RCW, a remedial statute, calls for both strict and liberal construction. The RLTA must be strictly construed by courts "in favor of the tenant," and liberally construed "to accomplish the purpose for which it was enacted." *Gebreseralse v. Columbia Debt Recovery*, 24 Wn. App. 2d 650, 658, 521 P.3d 221 (2022).

The court's primary duty in statutory interpretation is to discern and implement the legislature's intent. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). In so doing, the court relies on many tested, commonsensical, and intelligent principles to divine the meaning of the statute, principles employed when interpreting other important and even sacred texts. *State v. Jimenez*, 200 Wn. App. 48, 52, 401 P.3d 313 (2017).

We review a statute's plain language, the context of the statute, any related statutory provisions, and the statutory scheme as a whole to determine legislative intent. *Desmet v. Department of Social & Health Services*, 17 Wn. App. 2d 300, 310, 485 P.3d 356 (2021), *aff'd*, 200 Wn.2d 145, 514 P.3d 1217 (2022). In this appeal, we do not strive to discern the intent behind one statute, but the intent of the legislature as a whole when two statutes address the same subject matter and the two seemingly conflict. Both RCW 59.18.410(2) and RCW 59.18.630 govern an emergency rental assistance program's payment of rent owed by a tenant.

When performing statutory interpretation, courts must resolve apparent conflicts between statutes to give effect to each of them. *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000). To resolve such a conflict, courts generally give preference to

17

the more specific and more recently enacted statute. *Tunstall v. Bergeson*, 141 Wn.2d 201, 211 (2000). This latter principle is internally inconsistent when the more specific statute is the earlier statute.

After many readings of both RCW 59.18.410(2) and RCW 59.18.630, we conclude that a landlord's refusal to accept new lease terms in exchange for rent payment does not necessarily or otherwise excuse the landlord from offering a reasonable repayment proposal under RCW 59.18.630. Instead, the landlord's refusal to accept new lease terms should be considered one of many factors when the trial court weighs whether or not the landlord proposed reasonable payment terms.

RCW 59.18.410(2)'s provision that the landlord need not accept new lease terms demanded by the entity providing the emergency rental assistance program payment is the more specific of the statutory provisions addressing our question. Obviously, the principle of law encouraging us to apply the more specific statute favors Weidner Property Management.

All other principles of statutory construction favor Brian Cutsforth and Jena Kincheloe. Some of the new lease terms demanded by the emergency rental assistance program could impose minimal hardship on the landlord. Thus, denying the repayment on this ground would be unreasonable. When assessing the reasonableness of the landlord's proposal, the trial court still considers the needs of the landlord. The trial court may consider the extent of the hardship on the landlord by the new lease terms together with other factors relevant to a reasonable proposal.

18

The legislature enacted RCW 59.18.630's demand that the landlord relay a reasonable offer for repayment after RCW 59.18.410(2). The legislature adopted RCW 59.18.630 in the midst of a once in a century emergency created by a pandemic. The legislature intended compromises by both the tenant and the landlord with monetary assistance from the government. Although Brian Cutsforth's behavior at the apartment complex was not always exemplary, Cutsforth and Kincheloe could not pay rent due to illnesses. Thus, payment for past-due rent by an emergency rental assistance program serves the purpose behind RCW 59.18.630.

Perhaps omission of language excusing the landlord from accepting a reasonable offer if such offer required new lease terms was intentional on the part of the legislature because it concluded that the terms of RCW 59.18.410(2) already afforded this excuse. Nevertheless, since the legislature could have included such language in RCW 59.18.630 to explicitly express such a desire, the absence of such language suggests that the legislature did not always wish for the landlord to avoid cooperating with the emergency rental assistance program if the program demanded additional lease terms. When the legislature employs certain language in one instance and different language in another, the legislature evidences a difference in legislative intent. *Seeber v. Public Disclosure Commission*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981). We assume this principle applies when the legislature omits certain language in a different statute.

Finally, we note that, although both statutes govern the long process from nonpayment of rent to eviction from residential premises, each statute addresses a distinct

part in the process. RCW 59.18.630 governs at a time before filing of the unlawful detainer action, when more flexibility in the landlord is desirable. RCW 59.18.410(2) controls after entry of a judgment in the unlawful detainer action when compromise is less desirable.

Brian Cutsforth and Jena Kincheloe argue more that Weidner Property Management refused a counteroffer for a repayment plan rather than failed to propose a reasonable schedule for repayment. RCW 59.18.630 only references a duty imposed on the landlord to offer a reasonable schedule. Nevertheless, any landlord offer should be viewed in the mirror with a tenant counteroffer since the counteroffer may show the landlord's offer to be unreasonable.

We do not know whether the trial court determined Weidner Property Management's proposal of a repayment schedule for Brian Cutsforth and Jena Kincheloe was reasonable after consideration of the counterproposal that required new lease terms. Stated differently, we do not know if the trial court persisted in its view that the landlord need not consent to different lease terms when proposing a repayment plan under RCW 59.18.630. This court may remand a case to the superior court when we are uncertain as to the court's ruling and in order for the trial court to clarify its ruling. *Brear v. Washington State Highway Commission, Department of Highways*, 63 Wn.2d 815, 820, 389 P.2d 276 (1964).

Source-of-Income Discrimination

Under RCW 59.18.255, a landlord may not discriminate against a tenant based on the tenant's source of payment of rent. Brian Cutsforth and Jena Kincheloe also claim that Weidner Property Management violated this statute. The trial court dismissed the claim. Because our ruling on the interface between RCW 59.18.410(2) and RCW 59.18.630 may impact the decision with regard to whether Weidner violated RCW 59.18.255, we also direct the trial court to address this cause of action again on remand.

CONCLUSION

We reverse the trial court's rulings and remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Fearing, J._
Fearing, C.J.

WE CONCUR:

_Lawrence-Berrey, J._
Lawrence-Berrey, J.

_Birk, J._
Birk, J. [1]

---

[1] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).