IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JESSICA MAE GOODEILL, | ) | No. 32442-7-III |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MADISON REAL ESTATE, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — This court granted Jessica Goodeill's request for discretionary review to determine whether RCW 59.18.280 precludes her landlord from retaining a portion of her security deposit because it failed to timely provide her a full and specific statement of the basis for retaining her deposit. Her landlord argues that an exception to RCW 59.18.280 applies: "[C]ircumstances beyond [its] control prevented [it] from providing the statement within . . . fourteen days." We hold that a landlord may not avail itself of RCW 59.18.280's exception unless it accounts for any active or passive delays sufficient to show that it made a conscientious attempt to comply with the 14 day statutory notice. Because the landlord's evidence shows it has not met this standard, it may not avail itself of the statutory exception. We, therefore, reverse and remand.

FACTS

In November 2011, Jessica and Dave Goodeill entered into a seven-month lease agreement for a home at 1502 West Cora Court in Spokane, a property managed and ostensibly owned by Baker & Associates, LLC. The Goodeills paid $750.00 per month for rent, a $750.00 damage security deposit, and a $50.00 pet deposit.

Ms. Goodeill completed a standard move-in condition report and returned it to Baker within the requisite time. She noted a number of nicks, scrapes, stains, dirt marks, nail holes, and paint spots on the walls and wood trim throughout the house. She also noted nicks on closet doors, two burnt-out lightbulbs in the hallway, a "bad leak" coming from the washing machine's hot water valve, one garage remote that did not work, dirty and stained window blinds, peeling wallpaper, a faulty kitchen light, and a broken kitchen drawer, among other things. Pl.'s Ex. 1 at 31-34. Ms. Goodeill did not mince words when describing the yard: "Yard looks like hell." Pl.'s Ex. 1 at 32.

During the Goodeills' tenancy, Madison purchased Baker. On August 17, 2012, the Goodeills entered into a new lease agreement with Madison, with a lease end date of June 30, 2013. After their lease expired, the Goodeills' tenancy became month to month by operation of RCW 59.18.200(1)(a).

2

On August 5, 2013, the Goodeills gave Madison the requisite 20-day notice that they intended to vacate 1502 West Cora Court by the end of August. By August 27, the Goodeills had finished moving out of the residence. That same day, they had the carpets professionally cleaned. On August 28, Madison contacted Ms. Goodeill and requested approval to show the residence and keys to do so. Ms. Goodeill gave Madison one of her keys, but retained two other keys.

On August 30, Ms. Goodeill telephoned Madison to arrange a time to turn in her two remaining keys and complete move-out paperwork. She spoke with an employee named Marlie who told her that the office would be closed Monday, September 2, in observance of Labor Day, but that she could turn in her two keys by noon on September 3 to avoid being charged extra rent. On September 3, Ms. Goodeill turned in her last two keys to Madison. Despite the conversation between Ms. Goodeill and Marlie, Madison treated September 3 as the Goodeills' actual move-out date.

On September 4, Madison completed a move-out condition report, noting that the house needed a "deep clean" and some other minor repairs in order to be ready to rent. Def.'s Ex. 1 at 43. The record shows that Madison hired Action Tech Inc., to clean the blinds, and DavisPro Cleaning & Maintenance to clean, repair, and make the interior and exterior presentable for a new tenant.

The record does not establish when Madison contacted Action Tech. However, the Action Tech invoice shows that the blinds were cleaned on September 11, and the charges totaled $136.36. This invoice was created on September 11 and was mailed to Madison on that day.

A work order establishes that Madison did not contact DavisPro until September 9. The DavisPro invoices show that both the interior and exterior work was completed two days after Madison requested the work, or September 11. DavisPro billed its work on two separate invoices, one for $112.50 dated September 18, and the other for $135.69 dated October 1. These two invoices were mailed to Madison on those separate dates.

On September 16, Madison mailed a letter to the Goodeills, informing them that their deposit of $800.00 was being held to pay estimated charges for which it claimed they were liable. The notice estimated that the Goodeills owed $900.00, leaving a balance owing to Madison of $100.00. Pl.'s Ex. 1 at 4. The estimated charges were itemized as follows:

| | | |
|---|---|---|
| 9/1/2013 | RENT INCOME-SEPTEMBER 2013 (3DAYS) | $75.00 |
| 9/16/2013 | ESTIMATED: CITY UTIL-OVERAGES | $75.00 |
| 9/13/2013 | ESTIMATED: WINDOWS COVERING CLNG | $150.00 |
| 9/13/2013 | ESTIMATED: GENERAL HOUSE CLEANING | $350.00 |
| 9/13/2013 | ESTIMATED: LAWN CARE-DRY & WEEDS | $150.00 |
| 9/13/2013 | ESTIMATED: MAINT/DEBRIS REMOVAL | $100.00 |

Pl.'s Ex. 1 at 5. The notice further stated:

4

> Once all estimated costs have been determined, a final accounting will be forwarded to you. **We will verify againt** [sic] **move-in reported condition and move-out condition report and account** for less normal wear & tear. Please provide confirmation that utilities have been paid through 06/30/13 and your account will be adjusted accordingly.

Pl.'s Ex. 1 at 4 (emphasis in original).

On September 18, Ms. Goodeill called Madison to dispute the estimated charges. She spoke with an associate named Kirsten, who said that Madison typically sends a high estimate "so tenants would not be surprised" by the final statement. Clerk's Papers (CP) at 3. Kirsten said she had no receipts or documentation to support Madison's estimate, and urged Ms. Goodeill to "wait until the final statement," which could take between two to four additional weeks. CP at 3. Ms. Goodeill asked if it would be possible to return to the property and go over the estimated charges and was told that the property had already been occupied by new renters. Kirsten took Ms. Goodeill's contact information and told her someone would call her.

On September 19, Ms. Goodeill called Madison's office again, insisting that she speak with someone who could explain the estimated charges to her. An associate named Brandy told her that Ron Dickerson would call her back. Ms. Goodeill informed Brandy that she knew her rights as a tenant, and that she was entitled to her deposit refund within

14 days of moving out. Brandy told Ms. Goodeill that landlords are only required to provide an estimate of charges within 14 days.

Neither Mr. Dickerson nor anyone from Madison returned Ms. Goodeill's September 19 call. Four days later, Ms. Goodeill filed suit against Madison in the small claims court division of district court, seeking $1,600.00, which represented her $800.00 security deposit plus a penalty equal to her security deposit, as permitted by RCW 59.18.280.

On October 9—43 days after the Goodeills vacated their rental and 36 days after the Goodeills returned their last two keys to Madison—Madison sent the Goodeills the following full and specific statement as contemplated by RCW 59.18.280: ·

| | | |
|---|---|---|
| 1561 | vacancy cleaning | $112.50 |
| 6684 | cleaned 7 blinds & 1 shade | $89.05[1] |
| Avista Util-gas (tenant to reimb owner) | | $22.49 |
| Avista Util-elec (tenant to reimb owner) | | $29.44 |
| City Util-refuse 8/31 (tenant to reimb owner) | | $5.79 |
| City Util-sewer 8/31 (tenant to reimb owner) | | $36.74 |
| City Util-water 8/31 (tenant to reimb owner) | | $46.29 |
| 1592 repairs: replaced bulbs, cleaned up yard debris, pulled gold coin out of vent in entry way, checked all smoke detectors, repaired back door screen, rehung laundry room bi-fold doors (50% of 135.69 tenant exp) | | $67.85 |
| Admin Fee Re Inv1561 | | $11.25 |
| Admin Fee Re inv6684 | | $8.91 |

---

[1] Madison charged the Goodeills roughly 65 percent of the Action Tech bill, presumably acknowledging that the remaining portion was normal wear and tear.

| Admin Fee Re Inv1592 | $6.78 |
| Outstanding Amount (Rent Income Sept. 2013 = 3 days) | $120.00[2] |
| Total Charges | $557.09 |

Pl.'s Ex. 1 at 35. Madison applied a credit of $845.00, which represented the $800.00 security deposit and a $45.00 prepayment credit. The difference between the $845.00 credit and the total charges of $557.09 was $287.91, which Madison refunded to Ms. Goodeill with the October 9 notice.

On October 15, Madison received Ms. Goodeill's summons and complaint. On October 21, Madison filed a counterclaim seeking to offset the total charges from the requested security deposit. On October 30, the district court received exhibits and heard testimony from Ms. Goodeill and Madison's representative, Ron Dickerson. Ms. Goodeill argued that Madison had clearly violated RCW 59.18.280 and was not entitled to keep any of her security deposit as a result. Mr. Dickerson stated that Madison's maintenance department had called the utility companies to obtain final amounts for the time between when the Goodeills vacated the property and when Ms. Goodeill turned in her keys to Madison. Mr. Dickerson argued that DavisPro's delay in providing Madison with invoices for their work on 1502 West Cora Court constituted "circumstances beyond the landlord's control," allowing Madison to raise the defense of offset to Ms. Goodeill's

---

[2] Although not an issue on appeal, we are unable to find any justification for the

claim. CP at 31. The small claims court judge asked Mr. Dickerson to provide legal

authority supporting Madison's interpretation of RCW 59.18.280, to which Mr.

Dickerson replied:

> [Mr. Dickerson]: I've been in, I'm sorry to say this, I've been in court a few times in regards to this and every case we have had through precedence is basically said there's no way in the world you can get every bill inside of the time so it gives the provision there that said you are allowed, if it's beyond your circumstances that you can get all of the bills, then how are you going to create a final bill? You can't. Therefore
>
> [Judge]: So I guess what I need to ask you, do you have case law to support that? What, I mean I know you're telling me that you have been in court and other judges have said, yeah I get it you can't do it in time, but I'm somewhat familiar with this portion of the law and I, I've always wondered about 14 days doesn't seem to be an awfully long time to turn anything around, but I'm just wondering if you can give me something.
>
> [Mr. Dickerson]: I do not have a case law but I'm sure that I'll be able to get one.

CP at 31-32. The small claims court ruled in Ms. Goodeill's favor, and substantially

awarded her requested relief.

Madison, through counsel, appealed the small claims court award to superior court.

The parties filed briefing and the superior court heard argument on March 21, 2014.

Madison repeated the arguments it made in small claims court. The superior court

reversed the small claims court award and dismissed Ms. Goodeill's claim, finding that

---

various administrative fees and any September rent charge beyond $75.00.

Madison "was prevented from sending a full and specific statement within 14 days because of circumstances beyond their control, i.e., not receiving invoices until September 18 and October 1, 2013. A final full and specific statement was sent within a reasonable time after the final invoices were obtained." CP at 53. The superior court remanded the matter for entry of judgment and awarded reasonable attorney fees and costs to Madison.

On April 18, 2014, Ms. Goodeill requested discretionary review from this court. A commissioner of this court denied Ms. Goodeill's motion. On September 3, Ms. Goodeill moved this court to modify the commissioner's ruling. This court granted Ms. Goodeill's motion to modify and granted discretionary review.

## ANALYSIS

1. *Whether the superior court correctly found that DavisPro's delay in submitting its invoices to Madison constituted "circumstances beyond the landlord's control" under RCW 59.18.280*

   a. *Standard of Review*

RCW 12.36.055(1) provides: "The appeal from a small claims judgment or decision shall be de novo upon the record of the case, as entered by the district court." Such reviews are controlled by CRLJ 73 and CRLJ 75.[3] *See* RALJ 1.1(b). The superior

---

[3] Despite the 2001 amendment of RCW 12.36.055, both CRLJ 72(b) and CRLJ 75

court conducts a de novo review of the district court record, generally reading the exhibits and the transcribed testimony earlier considered by the small claims court. *See generally* CRLJ 75(c). Pursuant to CR 52, the superior court thereafter enters findings of fact and conclusions of law. *See* CR 1; CR 81(a).

Appellate courts generally review a superior court's findings of fact for substantial evidence. This is true even where the trial court's findings are based entirely on documentary evidence, provided that the trial court was called on to reconcile conflicting evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). However,

> "where . . . the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo."

*State v. Kipp*, 179 Wn.2d 718, 727, 317 P.3d 1029 (2014) (internal quotation marks omitted) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994)). In *Kipp*, the trial court ruled on a motion to suppress an audio recording. *Id.* at 726. The evidence considered by the trial court was a written stipulation

---

mistakenly refer to the appeal as a trial de novo, rather than a de novo appeal on the record. The amendment makes clear that there is no new trial in superior court. LAWS OF 2001, ch. 156, § 2.

to background facts and the 10-minute audio recording. *Id.* at 723. The question argued to the trial court was whether the recording was of a "private conversation" within the meaning of RCW 9.73.030(1)(b). *Id.* at 722-24. If so, the recording was required to be suppressed pursuant to RCW 9.73.050. *Id.* at 724. The trial court ruled that the recording was not of a "private conversation" within the meaning of the statute. *Id.* at 722. The recording was later considered by the jury, and the jury found Mr. Kipp guilty of the charged offenses. *Id.* On appeal, the *Kipp* court applied a de novo review to the order denying suppression, and reversed the trial court's order. *Id.* at 726-29, 733. In determining that de novo review was appropriate, the *Kipp* court emphasized that the trial court "made no credibility or other determinations for which its firsthand observation of the proceedings better positioned it to make," and that the evidence before the trial court, i.e., the stipulation to background facts and the 10-minute recording, did not present issues of fact. *Id.* at 728.

Here, the trial court reviewed documentary evidence that established the relevant timelines for what happened and when. The trial court was not called on to resolve issues of fact concerning what happened and when. Rather, it was called on to determine, given what happened and when, whether the landlord's failure to timely provide the statutory notice was "beyond the landlord's control." Because there was no conflicting evidence

11

which the trial court reconciled to make this determination, our review of the trial court's decision on this issue is de novo.

b.      *An improperly designated finding of fact is treated as a conclusion of law*

"If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact, but if a determination is made by a process of legal reasoning from, or interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law." *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978). Findings of fact that in reality pronounce legal conclusions are treated as legal conclusions. *Fine v. Laband*, 35 Wn. App. 368, 374, 667 P.2d 101 (1983). "A trial court's conclusions of law are reviewed de novo." *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001).

c.      *Application of the two rules of review to challenged finding of fact 5*

Ms. Goodeill assigns error to the superior court's critical finding of fact 5: "Madison Real Estate was prevented from sending a full and specific statement within 14 days because of circumstances beyond their control, i.e., not receiving invoices until September 18 and October 1, 2013." CP at 53. First, the superior court did not weigh conflicting evidence to make this quoted finding. Therefore, as explained above, our

12

review of the evidence pertaining to this finding is de novo. Second, even had the superior court weighed conflicting evidence to make finding of fact 5, our review still would be de novo. This is because finding of fact 5 is actually a conclusion of law. Here, the superior court interpreted the meaning of "circumstances beyond the landlord's control" in RCW 59.18.280 and then applied that interpretation to evidentiary facts. Pursuant to *Moulden*, this application of law to evidentiary facts constitutes a legal conclusion. For both of these reasons, we review finding of fact 5 de novo.

   d.    *Applying the plain meaning of the statutory exception*

RCW 59.18.280 provides, in relevant part:

> Within fourteen days after the termination of the rental agreement and vacation of the premises . . . the landlord *shall* give a full and specific statement of the basis for retaining any of the deposit together with the payment of any refund due the tenant under the terms and conditions of the rental agreement. No portion of any deposit shall be withheld on account of wear resulting from ordinary use of the premises.
>    . . . If the landlord fails to give such statement together with any refund due the tenant within the time limits specified above he or she *shall* be liable to the tenant for the full amount of the deposit. The landlord is also barred in any action brought by the tenant to recover the deposit from asserting any claim or raising any defense for retaining any of the deposit *unless the landlord shows that circumstances beyond the landlord's control prevented the landlord from providing the statement within the fourteen days* . . . . The court may in its discretion award up to two times the amount of the deposit for the intentional refusal of the landlord to give the statement or refund due. In any action brought by the tenant to recover the deposit, the prevailing party shall additionally be entitled to the cost of suit or arbitration including a reasonable attorney's fee.

13

(Emphasis added.)

Washington's Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, does not define "circumstances beyond the landlord's control." There are only four published cases citing or interpreting RCW 59.18.280, none of which address the meaning of "circumstances beyond the landlord's control." *See generally Sardam v. Morford*, 51 Wn. App. 908, 756 P.2d 174 (1988); *In re Marriage of Nelson*, 62 Wn. App. 515, 814 P.2d 1208 (1991); *Liera v. Senatore*, 75 Wn. App. 97, 877 P.2d 700 (1994); *State v. Schwab*, 103 Wn.2d 542, 693 P.2d 108 (1985). Accordingly, we must employ rules of statutory interpretation to discern the meaning of the phrase in question.

"Statutory interpretation is a question of law reviewed de novo." *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012). Our Supreme Court articulated the process of statutory interpretation in *Christensen v. Ellsworth*:

> A court's objective in construing a statute is to determine the legislature's intent. "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. An undefined statutory term should be given its usual and ordinary meaning. Statutory provisions and rules should be harmonized whenever possible. If the statutory language is susceptible to more than one reasonable interpretation, then a court may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent.

14

162 Wn.2d 365, 372-73, 173 P.3d 228 (2007) (citations and internal quotation marks omitted) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

With one exception, unless the landlord timely provides the required notice, RCW 59.18.280 bars a landlord from asserting any claim to the tenant's deposit. The exception requires "the landlord [to show] that circumstances beyond [its] control prevented [it] from providing the statement within the fourteen days." RCW 59.18.280. We see no ambiguity in the statutory exception, and therefore give effect to its plain meaning: Circumstances are either *beyond* a landlord's control or *within* a landlord's control. Circumstances *within* a landlord's control can be divided into either active delays or passive delays. For purposes of this analysis, "active delays" are when the landlord simply fails to promptly do something, and "passive delays" are when the landlord permits an unreasonable delay by another. We hold that a landlord may not avail itself of RCW 59.18.280's exception unless it accounts for any active or passive delay sufficient to show that it made a conscientious attempt to comply with the statutory 14 day notice.

Here, Madison has not shown this. First, Madison failed to explain why it did not provide DavisPro a work order soon after the Goodeills vacated on August 27, 2013, and

15

gave it a key the following day. Madison did not provide DavisPro a work order until September 9—12 days after it had access to the vacant rental. Within two days, DavisPro cleaned and repaired the inside and outside of the rental so it was rentable. Had Madison promptly contacted DavisPro, DavisPro would have completed its work well within the statutory 14 day timeframe. Second, Madison did not explain why it could not have learned of DavisPro's actual charges weeks before October 1. Madison could have telephoned DavisPro after it did its work and either asked DavisPro for its total charges or for it to promptly send its invoices. Madison did neither. Rather, Madison disregarded Ms. Goodeill's statutory right and passively waited 20 days for DavisPro's last invoice. Simply put, Madison's evidence falls woefully short of showing that circumstances beyond its control prevented it from timely providing Ms. Goodeill the statutory notice. We, therefore, conclude that Madison may not avail itself of the statutory exception.

2. *Monetary compensation*

Ms. Goodeill requests reasonable attorney fees, costs, and other relief. RCW 59.18.280 provides, in relevant part: "In any action brought by the tenant to recover the deposit, the prevailing party shall additionally be entitled to the cost of suit or arbitration including a reasonable attorney's fee." Subject to Ms. Goodeill's compliance with RAP 18.1(d), she is entitled to have a commissioner of this court

16

No. 32442-7-III
*Goodeill v. Madison Real Estate*

determine reasonable attorney fees and costs on appeal.  We remand for the superior court

to award Ms. Goodeill reasonable attorney fees and costs incurred at that level, to award

Ms. Goodeill her $800.00 deposit together with statutory interest from 14 days after

September 3, 2013, plus up to an additional $800.00 pursuant to RCW 59.18.280.

 Reverse and remand.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, J.

Fearing, J.

17