IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JULIE MARIE HESTON, | ) | |
| | ) | No. 39271-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ED L. CHRISTENSEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Julie Heston filed a complaint against her former landlord, Ed Christensen, which alleged 12 causes of actions, among which were source of income discrimination and wrongful withholding of a security deposit. The trial court granted summary judgment in favor of Ms. Heston on all but two of the causes of action. Mr. Christensen appeals. We affirm.

BACKGROUND

Ms. Heston had a written residential lease agreement with her former landlord, Mr. Christensen, that began in January 2021 and ended in December 2021. During her tenancy, Ms. Heston suffered financial hardship and applied for rental assistance through the Community Action Center (CAC). The CAC approved Ms. Heston's application for

the months of July through October 2021.  The CAC then contacted Mr. Christensen to discuss processing the rental payments.  Mr. Christensen responded to the CAC's request.  As the payment agreement was being finalized, the CAC requested Mr. Christensen sign a treasury rental assistance program rent payment agreement form (T-RAP).  The T-RAP form required Mr. Christensen to acknowledge the amount received from the CAC and attest that "[n]o late fees or additional charges will be made for the months covered after I receive the T-RAP payment."  Clerk's Papers (CP) at 104.

Rather than signing the T-RAP form, Mr. Christensen responded to the CAC that he was "THRU WITH YOU AND COMMUNITY ACTION CENTER PERTAINING TO JULIE HARRIS [sic].  **FINISHED!!!!**"  CP at 105.  After Mr. Christensen refused to accept payment from the CAC, he e-mailed Ms. Heston two letters demanding payment of the late rent and threatening to take "ACTION AS PROVIDED BY RCW 59.18 AND THE LEASE . . . IF FUNDS ARE NOT RECEIVED BY **WEDNESDAY, JULY 14, 2021**."  CP at 126.  When asked in his deposition what he meant by "'action as provided by RCW 59.18,'" Mr. Christensen testified that he intended the statement to mean he could proceed with an eviction or collection action.  CP at 115.

In his letters to Ms. Heston, Mr. Christensen wrote that a late fee of $65 had been added to her past due rent for July 2021 and demanded payment of $660.  Ms. Heston terminated her tenancy effective December 22, 2021.  As part of terminating her tenancy,

Ms. Heston completed a "CHECK-OUT" process with Jay Showalter, an employee of Mr. Christensen. CP at 95 (underscore omitted). On the "CHECK-OUT" form, Ms. Heston requested a refund of her $600 security deposit, less a $45 special handling fee, within 24 hours. *Id.*

Mr. Christensen mailed Ms. Heston a final bill, postmarked on January 15, 2022, that stated her security deposit was being withheld. During his deposition, taken on April 13, 2022, Mr. Christensen testified that he signed the final bill on January 14, 2022. Mr. Christensen further testified that he could not recall experiencing any difficulties between December 22, 2021, when Ms. Heston moved out, through the time that he signed the final bill.

In a subsequent affidavit, dated August 30, 2022, Mr. Christensen declared that between the time Ms. Heston moved out through when he signed the final bill, his health was very poor, he was not ambulatory, and he was unable to leave his residence without the assistance of a health care provider. In his affidavit, Mr. Christensen claimed he mailed the final bill within the statutorily mandated 21 days.

The final bill totaled $4,879.75 and contained numerous charges, including $131.15 in "[t]railing interest" from past due rent for the months of July through December. CP at 100. In his deposition, Mr. Christensen testified each interest charge

was based on the previous month's rent being unpaid. Mr. Christensen also included a statutory interest charge of $248.60.

## PROCEDURE

Ms. Heston filed a complaint against Mr. Christensen that alleged source of income discrimination. She then filed an amended complaint. Later, the superior court granted Ms. Heston leave to file a second amended complaint. In her second amended complaint, Ms. Heston alleged source of income discrimination in violation of RCW 59.18.255 (count 1), charges and late fees in violation of RCW 59.18.625 (counts 2-9), wrongful retention of her security deposit in violation of RCW 59.18.280 (count 10), requested a permanent injunction (count 11), and sought declaratory judgment (count 12). Ms. Heston moved for summary judgment on counts 1 through 10 and moved for voluntary dismissal of counts 11 and 12.

On September 26, 2022, the trial court dismissed counts 11 and 12 pursuant to CR 41(a)(1)(B) and entered judgment in favor of Ms. Heston on counts 1 through 10. The trial court awarded Ms. Heston attorney fees pursuant to RCW 59.18.255, .280, and .625. Based on Mr. Christensen engaging in source of income discrimination under RCW 59.18.255(4), the trial court awarded Ms. Heston four and one-half times her monthly rental amount on count 1. Under RCW 59.18.625(4), the trial court awarded Ms. Heston two and one-half times her monthly rental amount on counts 2 through 9.

The trial court ordered Mr. Christensen return Ms. Heston's security deposit and imposed a penalty of two times the amount of the security deposit pursuant to RCW 59.18.280(2). The trial court's judgment totaled $16,377.50. Mr. Christensen timely appeals.

ANALYSIS

On appeal, Mr. Christensen assigns three errors. First, Mr. Christensen claims the trial court erred in finding his refusal to accept payment from the CAC constituted income discrimination (count 1). Secondly, Mr. Christensen contends the trial court erred in finding his assessment of interest on the balance owed by Ms. Heston constituted a violation of RCW 59.18.625 (counts 2-9). Lastly, Mr. Christensen asserts the trial court erred in finding his refusal to return Ms. Heston's security deposit constituted a violation of RCW 59.18.280(1) (count 10).

The summary judgment procedure is designed to avoid the time and expense of an unnecessary trial. *Maybury v. City of Seattle*, 53 Wn.2d 716, 719, 336 P.2d 878 (1959). Orders on summary judgment are reviewed de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). In deciding a summary judgment motion, the court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.* (citing *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). "[W]hen reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *Hartley v. State*, 103 Wn.2d

5

768, 775, 698 P.2d 77 (1985) (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975)).

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Keck*, 184 Wn.2d at 370. "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). In response to a motion for summary judgment, the nonmoving party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, the nonmoving party must put "forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Id.* An appellate court may affirm summary judgment on any basis supported by the record. *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008).

COUNT 1 – SOURCE OF INCOME DISCRIMINATION

Mr. Christensen assigns error to the trial court's conclusion that his failure to accept payment from the CAC constituted source of income discrimination. Mr. Christensen claims he was not obligated to sign the T-RAP form as acceptance of the terms would preclude him from assessing fees and additional charges on the unpaid rent.

According to Mr. Christensen, RCW 59.18.255 does not require a landlord accept rental payments if acceptance would impose additional conditions on the landlord.

When interpreting a statute, "[w]e derive the plain meaning from the language of the statute and related statutes." *O.S.T. v. BlueShield*, 181Wn.2d 691, 696, 335 P.3d 416 (2014) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). Courts can further look to the context of the statutory scheme as a whole, as well as related statutory provisions, to determine legislative intent. *Desmet v. Dep't of Soc. & Health Servs.*, 17 Wn. App. 2d 300, 310, 485 P.3d 356 (2021), *aff'd*, 200 Wn.2d 145, 514 P.3d 1217 (2022). "'When the plain meaning of a statute is unambiguous—that is, when the statutory language admits only one meaning—the legislative intent is apparent, and we will not construe the statute otherwise.'" *O.S.T.*, 181 Wn.2d at 696 (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). However, when there is a conflict between related statutes in the statutory scheme, the more specific statute prevails. *Id.* at 701.

RCW 59.18.255(1) prohibits landlords from, among other acts, attempting to discourage the rental or lease of any real property to a current tenant based on the tenant's source of income. "'Source of income' includes benefits or subsidy programs such as housing assistance, public assistance, *emergency rental assistance*, veterans benefits, social security, supplemental income or other retirement programs, and other programs

7

administered by any federal, state, local, or nonprofit entity." RCW 59.18.255(5)

(emphasis added).

RCW 59.18.255 does not explicitly require a landlord accept additional conditions

to a lease agreement when receiving payment from a rental assistance program.

Therefore, we look to the rest of the statutory scheme to determine if such a requirement

exists. RCW 59.18.630 regulated the actions of landlords during the Governor's eviction

moratorium. The eviction moratorium applied to rent that accrued between March 1,

2020, and six months following the expiration of the eviction moratorium. RCW

59.18.630(2). The eviction moratorium expired on June 30, 2021. RCW 59.18.630(1).

Accordingly, the eviction moratorium covers rent that accrued between March 1, 2020,

and December 30, 2021.

Under the provisions of RCW 59.18.630(2), if a tenant had unpaid rent, their

landlord was required to offer a reasonable schedule for repayment of the unpaid rent

prior to initiating an unlawful detainer action. Should a tenant accept a reasonable

schedule for repayment of their unpaid rent, RCW 59.18.630(3)(c) required the landlord

to accept payment from any source of income as defined in RCW 59.18.255(5).

The plain meaning of RCW 59.18.630(3)(c) mandated a landlord accept payment

from any source of income as defined in RCW 59.18.255(5). RCW 59.18.255(5) defines

source of income benefits to include benefits or subsidies from emergency rental

assistance, such as the services offered by the CAC. However, RCW 59.18.630 is silent regarding whether a landlord is obligated to accept additional conditions associated with the payments. Accordingly, we must consider the statutory scheme governing the rights of landlords and tenants in unlawful detainer actions.

If a tenant is liable for unlawful detainer based on unpaid rent, the tenant may restore their tenancy by complying with the requirements of RCW 59.18.410(2). Should the tenant pledge emergency rental assistance funds after being found liable for unlawful detainer, such funds shall be accepted by the landlord. *Id.* However, by accepting the pledge of emergency rental assistance, the landlord is "not required to enter into any additional conditions not related to the provision of necessary payment information and documentation." *Id*.

In viewing the provisions of RCW 59.18.410(2) in conjunction with RCW 59.18.630 and RCW 59.18.255(5), Mr. Christensen was required to accept emergency rental assistance from the CAC, provided receipt of payment did not impose conditions beyond the necessary payment information or documentation. Mr. Christensen contends the T-RAP form imposed additional conditions on him that were unrelated to the necessary payment information or documentation. Specifically, Mr. Christensen alleges the T-RAP form required him to attest that "[n]o late fees or additional charges will be made for the months covered after I receive the T-RAP

9

Payment." CP at 104. Such an attestation, according to Mr. Christensen, violated the provisions of RCW 59.18.410(2). We disagree.

The CAC offered rental payments on Ms. Heston's behalf for months covered under RCW 59.18.630. RCW 59.18.625(1) provides, "A landlord may not charge or impose any late fees or other charges against any tenant for the nonpayment of rent that became due between March 1, 2020," and December 30, 2021. In requesting Mr. Christensen sign the T-RAP form, the CAC was not imposing additional conditions on Mr. Christensen. Rather, the terms of the T-RAP form reflect statutory prohibitions imposed on landlords. Consequently, Mr. Christensen's rejection of payment from the CAC on behalf of Ms. Heston constituted source of income discrimination under RCW 59.18.255.

COUNTS 2-9 – LATE FEE, TRAILING INTEREST, AND STATUTORY INTEREST

Mr. Christensen presents a three-fold challenge to the trial court's conclusion that his demand for interest on Ms. Heston's unpaid rent constituted a violation of RCW 59.18.625. First, Mr. Christensen contends the interest charge was not "a 'late fee or other charge for the non-payment of rent'" prohibited under RCW 59.18.625. Appellant's Initial Br. at 17. Secondly, Mr. Christensen claims he only issued one demand for interest, not eight as alleged by Ms. Heston. Thirdly, Mr. Christensen argues RCW 19.52.010 preempts RCW 59.18.625.

Governor's proclamation 20.19.6 placed numerous restrictions on landlords throughout the state of Washington. As discussed above, RCW 59.18.625(1) prohibited landlords from assessing late fees or other charges on unpaid rent that became due between March 1, 2020, and December 31, 2021.

In count 2 of her second amended complaint, Ms. Heston alleged Mr. Christensen violated RCW 59.18.625 when he imposed a $65 late fee for nonpayment of her July 2021 rent. Although Mr. Christensen struggled at his deposition to confirm for what month the $65 late fee was assessed, he testified Ms. Heston owed a total of $660 based on $595 in rent and a $65 late fee. Mr. Christensen's July 12, 2021, letter makes clear the late fee was assessed for rent due in July 2021. This was during the period protected under RCW 59.18.625. Consequently, Mr. Christensen violated RCW 59.18.625(1) as alleged in count 2.

In counts 3 through 8 of her second amended complaint, Ms. Heston alleged that Mr. Christensen charged "[t]railing interest" on unpaid rent that was due during the eviction moratorium. CP at 100. On December 22, 2021, Mr. Christensen notified Ms. Heston that he was assessing trailing interest as follows: $15.00 (July 2021), $15.00 (August 2021), $17.85 (September 2021), $23.80 (October 2021), $29.75 (November

11

2021), and a trailing interest charge of $29.75 from July-November 2021.[1] Mr. Christensen claims the trial court erroneously concluded the bill contained eight violations rather than one.

Ms. Heston's final bill contained six separate entries for interest owed between the months of July through November 2021. The separate demarcations align with Mr. Christensen's deposition testimony, wherein he agreed that each month listed in the trailing interest section of the final bill was intended to be a separate charge for the previous month's unpaid rent. The imposition of six separate trailing interest charges constituted six separate violations of the provisions of RCW 59.18.625(1) as it occurred during the eviction moratorium period in violation of RCW 59.18.625. Consequently, Mr. Christensen violated RCW 59.18.625(1) as alleged in counts 3 through 8.

In count 9 of her second amended complaint, Ms. Heston alleged that Mr. Christensen violated RCW 59.18.625 by charging statutory interest on the unpaid rent that accrued between July through November 2021. In the bill dated December 22, 2021, Mr. Christensen cited "RCW 4.56.110(1) Statutory Interest 1.5%/mo" to support his demand of $248.60. CP at 100. During his deposition, Mr. Christensen testified that the

---

[1] The final bill includes an interest charge for the month of December ($29.75) but does not appear to include the charge of $29.75 for July-November. The December charge was not included as one of the counts in the complaint but was referenced in the summary judgment order by the trial judge when deciding on all of the counts including count 8, the July-November charge.

one and one-half percent interest charge was on the entire amount owed, compounded at one and one-half percent monthly. The statutory interest charge was imposed on rent that was due during the eviction moratorium period in violation of RCW 59.18.625. Consequently, Mr. Christensen violated RCW 59.18.625(1) as alleged in count 9.

Mr. Christensen next challenges the applicability of RCW 59.18.625 to counts 3 through 9 because interest on unpaid rent is permissible under RCW 19.52.010. In support of his argument, Mr. Christensen cites *Rental Housing Ass'n v. City of Seattle*, 22 Wn. App. 2d 426, 512 P.3d 545 (2022). In *Rental Housing Ass'n*, we concluded that a city ordinance, containing language similar to RCW 59.18.625, which prohibited landlords from charging interest on past due rent, was preempted by RCW 19.52.010. *Id.* at 443. Furthermore, Mr. Christensen asserts that, in passing RCW 59.18.625, the legislature addressed conflicts of law, yet failed to include any reference to RCW 19.52.010. *See* LAWS OF 2021, ch. 115, § 20.

In the event of a conflict between two statutes, the court looks to a variety of factors to determine which law controls. As a general rule, a later-adopted statute is given preference over a conflicting statute. *Ass'n of Wash. Bus. v. Dep't of Revenue*, 155 Wn.2d 430, 449, 120 P.3d 46 (2005). Further, "[u]nder the principle of statutory construction, the specific statute prevails over a general statute." *O.S.T.*, 181 Wn.2d at 701.

13

Here, the statute that barred the imposition of late fees and other charges,

RCW 59.18.625, became effective on April 22, 2021, while the current version of

RCW 19.52.010 became effective on July 28, 2019. *See* LAWS OF 2021, ch. 115; LAWS

OF 2019, ch. 227. Moreover, RCW 59.18.625 was passed with the specific intent of

alleviating some of the burdens renters faced during the public health crisis brought on

during the COVID-19 pandemic, while RCW 19.52.010 merely lays out exceptions to

prejudgment interest on consumer leases and does not specifically address the issue of

property. *See* LAWS OF 2021, ch. 115. RCW 59.18.625 is both the later-adopted statute

as well as the statute specific to the issues raised in this appeal. Accordingly, as it

concerns this appeal, RCW 59.18.625 regulates provisions related to late fees and other

charges over interest rate provisions of RCW 19.52.010.

Further, Mr. Christensen's reliance on *Rental Housing Ass'n* is misplaced. In

*Rental Housing Ass'n*, we concluded that RCW 19.52.010 entitles a party to

"prejudgment interest on any liquidated claim to compensate them for loss of use on

money *wrongfully* withheld by another party." 22 Wn. App. 2d at 444 (emphasis added).

Here, Mr. Christensen engaged in source of income discrimination by rejecting payment

through a rental assistance program on behalf of Ms. Heston. Ms. Heston did not

wrongfully withhold money from Mr. Christensen for purposes of RCW 19.52.010.

Rather, Mr. Christensen wrongfully rejected payment made on behalf of Ms. Heston.

14

COUNT 10 – SECURITY DEPOSIT

Mr. Christensen asserts the trial court erred in concluding his refusal to return Ms. Heston's security deposit constituted a violation of former RCW 59.18.280(1) (2016). Mr. Christensen claims that, under former RCW 59.18.280(2), circumstances beyond his control prevented him from timely mailing documents related to the retention of Ms. Heston's security deposit.

Under former RCW 59.18.280(1), a landlord was allowed 21 days from the termination of the lease agreement to provide their tenant a full and specific statement explaining the basis for retaining a deposit. Unless the landlord can show circumstances outside their control, should they fail to provide a tenant with the required documentation within the statutory period, they are liable for the full amount of the deposit. Former RCW 59.18.280(2).

When deciding whether the exception to former RCW 59.18.280(2) applies, there is no ambiguity as "[c]ircumstances are either *beyond* a landlord's control or *within* a landlord's control." *Goodeill v. Madison Real Est.*, 191 Wn. App. 88, 101, 362 P.3d 302 (2015). Circumstances within a landlord's control can be divided into active or passive delays. *Id*. at 102. Active delays are when a landlord simply fails to promptly do something, and passive delays are when a landlord permits an unreasonable delay by another. *Id*.

In viewing the evidence in the light most favorable to Mr. Christensen, his affidavit, dated August 30, 2021, reveals his health was very poor, he was not ambulatory, and he was unable to leave his residence without the assistance of a health care provider at the time his RCW 59.18.280 notice was due. Further, in his affidavit, Mr. Christensen claims he mailed the security deposit reconciliation sheet within the required 21 days.

Generally, when a party gives clear answers to unambiguous questions in a deposition that negate the existence of any question of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Cornish Coll. of Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 227, 242 P.3d 1 (2010) (quoting *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989)).

Mr. Christensen's affidavit contradicts his earlier deposition testimony. First, during his deposition, Mr. Christensen testified he signed the final bill on January 14, 2022. This would correspond with the final bill being postmarked January 15, 2022. Later, in his affidavit, Mr. Christensen declared that he mailed the final bill within 21 days of Ms. Heston vacating the property. It is undisputed Ms. Heston vacated the property on December 22, 2021. Therefore, a full and specific statement explaining the

basis for retaining Ms. Heston's security deposit was required to be mailed no later than January 12, 2022.

Secondly, Mr. Christensen testified at his deposition that he had not experienced any difficulties between the time Ms. Heston vacated the property and January 14, 2022, when he signed the final bill. In his subsequent affidavit, Mr. Christensen cites numerous health conditions and the COVID-19 pandemic as a basis for any delay in mailing the full and specific statement explaining the basis for retaining the deposit.

Given that subsequent affidavits cannot create an issue of material fact to defeat summary judgment when a prior deposition offered clear testimony, we are bound to rely on Mr. Christensen's deposition testimony. His testimony established that he did not complete or mail the form within the 21-day statutory period. While Mr. Christensen's affidavit established that he was is in poor health and was unable leave his residence without assistance, it does not present sufficient facts to support the exception provided in former RCW 59.18.280(1). Clearly, Mr. Christensen was capable of managing his rental properties from his home through the assistance of his employees. Consequently, Mr. Christensen violated former RCW 59.18.280 as alleged in count 10.

Mr. Christensen assigns error to the trial court awarding Ms. Heston double the security deposit amount. He claims the evidence failed to establish that he intentionally refused to mail the statement or refund the deposit. Ms. Heston responds that it is

17

undisputed that Mr. Christensen did not return the deposit within 21 days. Such inaction amounts to an intentional refusal to comply with former RCW 59.18.280.

Former RCW 59.18.280(2) stated that "[i]f the landlord fails to give the statement together with any refund due the tenant within the time limits specified he or she shall be liable to the tenant for the full amount of the deposit." In its discretion, a trial court may "award up to two times the amount of the deposit for the *intentional* refusal of the landlord to give the statement, or refund due." *Id*. (emphasis added). A tenant seeking an award greater than their deposit has the burden of proving the landlord intentionally withheld the deposit.

Here, the final bill claimed cleaning fees and damages totaling $253.20. Without explanation, this amount was increased to $255.00 on the final bill. Also included in the final bill was an additional $240.00 charge for shampooing the carpets in three rooms. However, the fee for carpet cleaning was previously included in the $255.00 total cleaning and damage charge. At his deposition, Mr. Christensen testified that he may have mistakenly assessed the $240.00 carpet cleaning fee.

Mr. Christensen intentionally refused to timely and sufficiently provide Ms. Heston a full and specific statement explaining the basis for retaining her deposit as well as a refund due. First, Mr. Christensen failed to timely mail a full and specific statement explaining the basis for retaining Ms. Heston's deposit. Secondly, even if we were to

No. 39271-6-III
*Heston v. Christensen*

conclude his notice was timely, Mr. Christensen, at best, justified only withholding $253.20 of the deposit, not $600.00. The trial court correctly awarded Ms. Heston double her security deposit per former RCW 59.18.280(2).

ATTORNEY FEES

Ms. Heston requests an award of attorney fees on appeal. A party is entitled to an award of reasonable attorney fees if an applicable law grants the right to recover attorney fees. RAP 18.1(a). Mr. Christensen's violation of RCW 59.18.625, .280, and .255 resulted in a judgment in favor of Ms. Heston. Each statute Mr. Christensen violated contains a provision for an award of reasonable attorney fees to the prevailing party. As the prevailing party, we grant Ms. Heston's request for an award of reasonable attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

19